**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

ROBERTO TORRES, SR. and DAWN
TORRES, as Parents, Natural Guardians
and Next Best Friends of DAMIEN
TORRES, EMILIO TORRES,
ROBERTO TORRES, JR. and ALEIDA
TORRES,

    Plaintiffs,

vs.

NORTH FAYETTE COMMUNITY
SCHOOL DISTRICT, KATHLEEN
BAUER, Individually and in her Official
Capacity, KEN HAUGHT, Individually
and in his Official Capacity, WAYNE
O'BRIEN, Individually and in his
Official Capacity, and RON IMOEHL,
Individually and in his Official Capacity,

    Defendants.

No. 07-CV-2069-LRR

**ORDER**

*TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*    *RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . *2*

*III.*   *SUBJECT-MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . *3*

*IV.*   *LEGAL STANDARD* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*V.*     *FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

*VI.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
        *A.*    *Count I: Race, Color and National Origin Discrimination* . . . . . . . *6*
                *1.*    *Iowa Code chapter 216* . . . . . . . . . . . . . . . . . . . . . . . . *6*
                       *a.*    *Discrimination in public accommodation* . . . . . . . . . . *7*
                       *b.*    *Iowa Code section 216.11* . . . . . . . . . . . . . . . . . . . *9*
                *2.*    *Title VI* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

  B. *Count II: 42 U.S.C. § 1983* . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    1. *Crawford* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    2. *Abrams* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VII. *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## *I. INTRODUCTION*

The matter before the court is the "Amended Motion to Dismiss Re: Plaintiffs' Second Amended Complaint" ("Motion") (docket no. 16), filed by Defendants North Fayette Community School District ("District"), Kathleen Bauer, Ken Haught, Wayne O'Brien and Ron Imoehl.[1]

## *II. RELEVANT PROCEDURAL BACKGROUND*

On February 29, 2008, Plaintiffs Roberto Torres, Sr. and Dawn Torres filed a two-count Second Amended Complaint ("Complaint") (docket no. 12).[2] In Count I, Plaintiffs allege Defendants "engaged in a pattern and practice of acts which both encouraged discrimination and discriminated against the Plaintiffs on account of their race, color, and national origin [. . .] in violation of the Iowa Civil Rights Act and Title VI of the Civil Rights Act of 1964." Complaint at ¶ 26. In Count II, Plaintiffs allege Defendants infringed upon Plaintiffs' civil rights "granted to them by the Fourteenth Amendment to the Constitution of the United States" in violation of 42 U.S.C. § 1983. *Id.* at ¶ 31.

On March 19, 2008, Defendants filed the Motion. On March 31, 2008, Plaintiffs filed a Resistance (docket no. 18). On April 3, 2008, Defendants filed a Reply (docket no. 20). On April 7, 2008, the court ordered Plaintiffs to file any and all complaints they filed

---

[1] On February 15, 2008, Defendants filed a Motion to Dismiss (docket no. 6). On March 10, 2008, the court denied the Motion to Dismiss without prejudice and granted Defendants leave to file an amended motion to dismiss (docket no. 14).

[2] On October 15, 2007, Plaintiffs filed a complaint (docket no. 1). On December 18, 2007, plaintiffs filed an Amended Complaint (docket no. 3).

with the Iowa Civil Rights Commission ("ICRC") relating to the instant action ("Administrative Complaints"). On April 7, 2008, Plaintiffs filed their Administrative Complaints (docket no. 22). The court finds the Motion fully submitted and ready for decision.

### III.  SUBJECT-MATTER JURISDICTION

The court has federal question jurisdiction over part of Count I and all of Count II. To the extent Count I alleges a violation of 42 U.S.C. § 2000d ("Title VI"), the court has federal question jurisdiction. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). The Court has federal question jurisdiction over Count II because Plaintiffs allege a violation of their federal constitutional rights pursuant to 42 U.S.C. § 1983. *See id*. The court has supplemental jurisdiction over Plaintiffs' Iowa Civil Rights Act claim because it is so related to the claims over which the court has federal question jurisdiction that it forms part of the same case or controversy. *See* 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]"); *Van Orden v. Wells Fargo Home Mortg., Inc.*, 443 F. Supp. 2d 1051, 1057 (S.D. Iowa 2006) (Gritzner, J.) (exercising supplemental jurisdiction over claims arising under the Iowa Civil Rights Act when brought in conjunction with federal civil rights claims). *But see* 28 U.S.C. § 1367(c) (granting district court discretion to decline to exercise supplemental jurisdiction over state law claims under certain circumstances). The court is satisfied it has subject-matter jurisdiction over this matter.

### IV.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes the district court to dismiss a claim for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In assessing a motion to dismiss, the court must view the allegations in the

complaint in the light most favorable to the non-moving party. *In re Operation of Mo. River Sys. Litig.*, 418 F.3d 915, 917 (8th Cir. 2005). The court must accept all the factual allegations in the complaint as true. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citing, in part, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)). "Rule 12(b)(6) does not countenance [. . .] dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).[3]

## V. FACTUAL BACKGROUND

Plaintiffs are parents and natural guardians to Damien Torres, Emilio Torres, Roberto Torres, Jr., and Aleida Torres (together, the "Torres Children"). Plaintiffs bring the instant action on behalf of the Torres Children. At all times material to the Motion, the Torres Children were students in the District. Roberto Torres, Sr., the Torres Children's father, is of Puerto Rican and Greek descent. Dawn Torres, the Torres Children's mother, is a Caucasian American.

---

[3] Defendants cite the traditional Rule 12(b)(6) test, which provides dismissal is warranted "only when it appears beyond doubt that the plaintiff can prove *no set of facts* in support of [the plaintiff's] claim which would entitle [the plaintiff] to relief." *Mo. River Sys. Litig.*, 418 F.3d at 917 (emphasis added) (internal quotation marks omitted). In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), which involved a claim under the Sherman Act, the Supreme Court "retire[d]" the "no set of facts" language. *Twombly*, 127 S. Ct. at 1968-69. However, it is unclear whether the old test has been replaced by a new rule or whether *Twombly* applies to non-antitrust cases. *See generally Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 518-23 (S.D. Iowa 2007) (Gritzner, J.) (discussing *Twombly* and adopting an approach which requires plaintiffs to "provide 'enough factual matter (taken as true) to suggest' unlawful or otherwise actionable conduct" (quoting *Twombly*, 127 S. Ct. at 1965)); *Hogue v. Palisades Collection, LLC*, 494 F. Supp. 2d 1043, 1046 (S.D. Iowa 2007) (Pratt, C.J.) (denying a motion to dismiss in a Fair Debt Collection Practices Act and stating: "[i]n addressing a motion to dismiss under [Rule 12(b)(6)], th[e court] must follow the new standard of review articulated by the United States Supreme Court in [*Twombly*]"). Because the parties did not discuss *Twombly* and the court would reach the same result in its disposition of the Motion under both the "no set of facts" test and the *Twombly* test, the court need not decide whether *Twombly* is applicable to the Motion.

The District is an Iowa school district located in West Union, Fayette County, Iowa. The District receives federal financial assistance. At all times material to the Motion, the District employed Bauer as the principal of West Union Elementary High School; Haught as the principal of North Fayette Middle School; O'Brien as the principal of North Fayette High School; and Imoehl as vice principal of North Fayette High School.

In the fall of 2004, Aleida "began to be harassed [. . .] and called names such as 'nigger' and 'Mexican.'" Complaint at ¶ 17. Between the fall of 2004 and October of 2005, "Roberto, Jr. was referred to with racial slurs and physically attacked by fellow students[.]" *Id.* at ¶ 18. Emilio "was called names, had profanity directed toward him, and was physically attacked by fellow students." *Id.* at ¶ 19. Emilio was "falsely accused by students and the administration of initiating problems, and when the punishments were issued, Emilio's [punishments] would be more severe than the white students' punishments." *Id.* "Damien was referred to as a 'Mexican' and 'spik' by fellow students, targeted by the faculty and staff, and subjected to profanity and told [. . .] he should go back across the border." *Id.* at ¶ 20. Additionally, Damien was "accused of participating in a crime and threatened with severe punishment." *Id.* at ¶ 21. After determining Damien was not involved in a crime, "the fellow[] white student who had done the act was not punished." *Id.*

Plaintiffs made numerous complaints about these experiences to Defendants; however, "Defendants did not take steps to prevent the harassment and unfair treatment of the [Torres Children]." *Id.* at ¶ 25. In response to Plaintiffs' complaints, "Defendants made statements to the effect that there was not anything that could be done, and the [Torres Children] should just accept the fact that this type of treatment is the way it is in this community and people have those types of attitudes." *Id.* The motivating factor behind Defendants' treatment of the Torres Children was "race, color[] and national origin." *Id.* at ¶ 27. "Defendants engaged in a continuing, widespread, persistent pattern

5

and practice of acts which both encouraged discrimination and discriminated against the [Torres Children] on account of their race, color, and national origin." *Id*. at ¶ 33.

On January 7, 2006, Plaintiffs filed their Administrative Complaints with the ICRC. In the Administrative Complaints, Plaintiffs contended the Torres Children had been discriminated against in the area of "Education." Plaintiffs alleged discrimination in education by selecting it from the following array of choices: "Credit," "Employment," "Education" and "Public Accommodations." Administrative Complaints at 2, 6, 10 and 14. On September 4, 2007, the ICRC issued an Administrative Release Letter of Right-to-Sue ("Right-to-Sue") for the Torres Children "pursuant to Iowa Code Section 216.16 and Iowa Administrative Code Section 3.10." First Amended Complaint (docket no. 3-2).[4]

## VI. ANALYSIS

Defendants ask the court to dismiss Count I as to the individually named Defendants and to dismiss Count II in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A. Count I: Race, Color and National Origin Discrimination

Defendants argue the court should dismiss Count I of the Complaint as to the individually named Defendants. Count I alleges Defendants engaged in and encouraged discriminatory acts in violation of Chapter 216 of the Iowa Code and in violation of Title VI.

#### 1. Iowa Code chapter 216

Defendants contend Plaintiffs' Iowa Code chapter 216 claim must be brought

---

[4] Plaintiffs inadvertently failed to attach the Right-to-Sue to the Complaint. The court takes judicial notice of the Right-to-Sue attached to the Amended Complaint (docket no. 3), which the court assumes to be the same as the Right-to-Sue referenced in the Complaint. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (addressing court's ability to take judicial notice of public records).

pursuant to section 216.9,[5] which prohibits unfair or discriminatory acts by educational institutions. Section 216.9 provides: "It is an unfair or discriminatory practice for any educational institution to discriminate on the basis of race, creed, color [. . . or] national origin [. . .] in any program or activity." Iowa Code § 216.9(1). An "educational institution" includes elementary and secondary schools. *Id.* at § 216.9(2). Individuals are not included in the definition of "educational institution." *Id.* Under the plain language of section 216.9(2), the exclusion of individuals from the definition of "educational institution" operates to bar liability for discrimination in education against individuals, including the individually named Defendants in their individual capacity.

Plaintiffs make two arguments in an effort to overcome the exclusion of individuals from liability under section 216.9: (1) section 216.9 does not apply because the operative statute for Plaintiffs' Iowa Code chapter 216 claim is section 216.7, which prohibits discrimination in the furnishing of public accommodations and applies to "agents or employees" of a school, and, therefore encompasses the individually named Defendants; and (2) even if section 216.9 applies, the individually named Defendants may be held liable under the "aid" and "abet" language of section 216.11 for conduct prohibited by section 216.9. Both of these arguments fail.

### a. *Discrimination in public accommodation*

Plaintiffs argue Iowa Code section 216.7 provides for individual liability against the individually named Defendants. Section 216.7 provides:

> 1. It shall be an unfair or discriminatory practice for any owner, lessee, sublessee, proprietor, manager, or superintendent of any public accommodation or any agent or employee thereof:

---

[5] On April 2, 2008, the Iowa legislature amended Iowa Code section 216.9. 2008 Iowa Legis. Serv. 2320 (West). This amendment does not impact the portion of the statute relevant to the Motion.

> a. To refuse or deny to any person because of race, creed, color, [. . .] national origin, [. . .] the accommodations, advantages, facilities, services, or privileges thereof, or otherwise to discriminate against any person because of race, creed, color [. . . or] national origin, [. . .] in the furnishing of such accommodations, advantages, facilities, services, or privileges.

Iowa Code § 216.7(1)(a). Plaintiffs contend, and Defendants do not dispute, (1) a "public accommodation" includes schools and (2) section 216.7 permits a cause of action against an "agent" or "employee" of a public accommodation, which would include the individually named Defendants. However, Plaintiffs failed to plead discrimination in public accommodation in both the Complaint and the Administrative Complaints.

In paragraph 26 of the Complaint, Plaintiffs allege a generic "violation of the Iowa Civil Rights Act," the act under which both discrimination in accommodation and education fall. However, earlier in the Complaint, Plaintiffs specify the nature of their Iowa Civil Rights Act claim by alleging they "filed [Administrative] Complaints with the [ICRC . . .] *alleging discrimination in education*." Complaint at ¶ 11 (emphasis added). Nothing in the Complaint suggests Plaintiffs intended to allege discrimination in public accommodation in addition to or instead of discrimination in education. In a complaint, a plaintiff is required to give a defendant "'fair notice of what the [. . .] claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. at 2200 (quoting *Twombly*, 127 S. Ct. at 1964). In light of Plaintiffs' averment of "alleging discrimination in education" in the Administrative Complaints, the court holds the Complaint gave Defendants fair notice of a discrimination in education claim—not a discrimination in public accommodation claim.

Even if the court could somehow construe the Complaint to allege discrimination in public accommodation, Plaintiffs would be barred from raising this claim because they failed to exhaust the requisite administrative remedies. In the Administrative Complaints,

by checking the box for discrimination in education instead of discrimination in public accommodation, Plaintiffs specifically chose to forgo a claim for discrimination in public accommodation. To bring a judicial action pursuant to the Iowa Civil Rights Act, "[a] person claiming to be aggrieved by an unfair or discriminatory practice must initially seek [. . .] administrative relief by filing a complaint with the [ICRC] in accordance with [Iowa Code] section 216.15." Iowa Code § 216.16(1). Only after a "proper filing of a complaint with the [ICRC]" may a complainant "commence an action for relief in the district court[.]" *Id.* Because Plaintiffs failed to follow the requisite administrative procedure to pursue a discrimination in accommodation claim under Iowa Code section 216.16, the court finds Plaintiffs failed to exhaust their administrative remedies for this claim and are barred from raising it in the instant action. *Cf. McElroy v. State*, 703 N.W.2d 385, 390 (Iowa 2005) (holding plaintiff's decision to check the box for "sex" rather than "retaliation" in administrative complaint constituted a failure to exhaust administrative remedies as to plaintiff's retaliation-in-employment claim).

### b. *Iowa Code section 216.11*

In an alternative effort to avoid dismissal of their claims against the individually named Defendants for their Iowa Code chapter 216 claim, Plaintiffs argue they can sue the individually named Defendants under Iowa Code section 216.11 for aiding or abetting to engage in discrimination in education under section 216.9. Section 216.11(1) provides it is an unfair or discriminatory practice for "[a]ny person to intentionally aid, abet, compel, or coerce another person to engage in any of the practices declared unfair or discriminatory by this chapter." Iowa Code § 216.11(1).

*Murphy v. Pleasantville Sch. Dist.*, No. 400CV10010, 2000 WL 33361989 (S.D. Iowa May 4, 2000) (Longstaff, J.) decided the same issue as that in the Motion—whether individually named defendants in a section 216.9 action can be held liable under the "aid" and "abet" language in section 216.11(1). For guidance, *Murphy* turned to *Vivian v.*

9

*Madison*, 601 N.W.2d 872 (Iowa 1999). *Murphy*, 2000 WL 33361989 at \*3. In *Vivian*, the Iowa Supreme Court held a supervisory employee could be held liable under section 216.6, which prohibits discriminatory practices in employment. *Vivian*, 601 N.W.2d at 878. In so holding, *Vivian* noted section 216.6(1) expressly prohibits a "person" from engaging in discriminatory practices in employment. *Id*.

*Murphy* found it "inappropriate to extend *Vivian*'s holding" to claims brought under section 216.9 for discrimination in education because, unlike section 216.6 (the statute at issue in *Vivian*), the Iowa legislature "did not use the word 'person' in section 216.9." *Murphy*, 2000 WL 33361989 at \*3. *Murphy* also recognized *Vivian* "did not rely on the presence of a prohibition against aiding or abetting in section 216.11 [. . .] to find that individuals can always be liable in any context." *Id*. *Murphy* noted if one read section 216.11 to allow individuals "to be sued for aiding and abetting the same discriminatory acts [. . .] already prohibited under section 216.9, it would be an absurd result." *Id*. at n.4. *Murphy* reasoned a "school can only act through its employees and representatives, and to allow plaintiff to allege that [the individually named defendants] both committed the discriminatory acts, *and* aided and abetted these same acts, is not conceptually reconcilable." *Id*. (emphasis added).

The court finds the reasoning in *Murphy* to be sound. Although the Iowa General Assembly elected to permit a cause of action against individuals for discrimination in employment by including the word "person" in the operative statute, it did not do so for discrimination in education. The court is unwilling to end-run this legislative intent by allowing individual liability for discrimination in education pursuant to the "aid" and "abet" language in section 216.11(1).

In light of the foregoing, the court shall dismiss Plaintiffs' Iowa Code chapter 216 claim against the individually named Defendants in their individual capacity.

*2. Title VI*

Defendants exhaustively argue the court should dismiss Count I against the individually named Defendants in both their official and individual capacity for claims arising under Title VI. Essentially, Defendants argue Title VI claims cannot be brought against a school employee in his or her individual capacity because Title VI only prohibits discriminatory acts by grant recipients. Defendants also argue the official capacity claims should be dismissed because such claims may only be brought against individuals who exercise administrative control over programs and activities within a school district, which excludes the individually named Defendants. Plaintiffs failed to provide any response to these arguments. Accordingly, the court shall grant this portion of the Motion as unresisted and will dismiss the Title VI claims in Count I as to the individually named Defendants in their individual and official capacity. *See* L.R. 7.e-f. Because there is no remaining claim against the individually named Defendants in their individual capacity in Count I, the court shall dismiss the individually named Defendants in their individual capacity entirely from Count I. The court also dismisses the individually named Defendants in their official capacity from the Title VI claim. The only claim in Count I surviving against the individually named Defendants is the Iowa Civil Rights Act claim raised against the individually named Defendants in their official capacity.

### B. Count II: 42 U.S.C. § 1983

Defendants argue the court should dismiss Count II in its entirety because Plaintiffs' § 1983 claim is "premised entirely on discrimination for which recovery could have been sought under [Title VI]" and, therefore, is subsumed by Title VI. Brief in Support of Motion (docket no. 16-2), at 8. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State [. . .] subjects, or causes to be subjected, any citizen of the United States [. . .] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the

party injured in an action at law[.]

42 U.S.C. § 1983. "[T]his section 'means what it says' and authorizes suits to enforce individual rights under federal statutes as well as the Constitution." *City of Rancho Palos Verdes, Ca v. Abrams*, 544 U.S. 113 (2005) (quoting *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980)).

Plaintiffs argue their § 1983 claim is proper because it is premised on constitutional violations—not Title VI, which should allow them to maintain their § 1983 claim, and they cite *Crawford v. Davis*, 109 F.3d 1281 (8th Cir. 1997) in support of this position. The deciding issue is whether *Crawford* controls in this case. As indicated above, Plaintiffs contend it applies. Defendants, on the other hand, contend *Crawford* is inapplicable because more recent precedent in *Abrams* erodes *Crawford*'s underlying principles.

### 1. *Crawford*

In *Crawford*, the plaintiff filed suit under Title IX and § 1983, raising "an array of liability theories based on Title IX and equal protection principles[.]" *Crawford*, 109 F.3d at 1282. Although *Crawford* is limited in scope to Title IX claims, the court finds its reasoning and analysis, if not overruled by *Abrams*, applies to the Motion. Title IX is patterned after Title VI and interpreted in the same manner as Title VI. *See Barnes v. Gorman*, 536 U.S. 181, 185 (2002) (stating "the Court has interpreted Title IX consistently with Title VI"); *Alexander v. Sandoval*, 532 U.S. 275, 279-80 (2001) (recognizing a private right of action exists under both Title VI and Title IX); *Alexander v. Underhill*, 416 F. Supp. 2d 999, 1007 n.7 (D. Nev. 2006) (noting, "[a]s with Title IX, the court finds [. . .] Title VI contains a comprehensive enforcement scheme" and "Title IX relies on many of the provisions applicable to Title VI"). Additionally, the parties appear to agree the *Crawford* analysis, if not overruled by *Abrams*, applies to the Motion.

*Crawford* addressed whether a § 1983 claim for a violation of constitutional rights, the facts of which also gave rise to a cause of action under Title IX, was subsumed by the

Title IX claim. *Crawford*, 109 F.3d at 1283. *Crawford* recognized a circuit split on this issue, noting the Sixth Circuit Court of Appeals and Tenth Circuit Court of Appeals held Title IX does not subsume § 1983 claims in this context, while the Third Circuit Court of Appeals and Seventh Circuit Court of Appeals held otherwise. *Id.* (citing, respectively, *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 722-24 (6th Cir. 1996); *Seamons v. Snow*, 84 F.3d 1226, 1233-34 (10th Cir. 1996); *Williams v. Sch. Dist. of Bethlehem, Pa.*, 998 F.2d 168, 176 (3rd Cir. 1993) and *Waid v. Merrill Area Pub. Schs.*, 91 F.3d 857, 862-63 (7th Cir. 1996)).

At issue in *Crawford* was the application of the *Sea Clammers* doctrine, which provides: "when the remedial device[] provided in a particular Act [is] sufficiently comprehensive, [it] may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981). *Crawford* had essentially two holdings pertaining to a party's ability to bring a § 1983 claim in light of *Sea Clammers*. First, *Crawford* held:

> To the extent [. . . plaintiff's] claims are premised on alleged violations of the Equal Protection Clause, we believe that the application of *Sea Clammers* to her claims is plainly inapposite. *Sea Clammers* in no way restricts a plaintiff's ability to seek redress via § 1983 for the violation of independently existing constitutional rights, even if the same set of facts also gives rise to a cause of action for the violation of statutory rights.

*Crawford*, 109 F.3d at 1284.

*Crawford*'s second holding stated:

> To the extent [. . . plaintiff's] § 1983 claims are based on alleged violations of Title IX, we find unpersuasive the defendants' argument that Title IX contains a "sufficiently comprehensive" remedial scheme. The only enforcement mechanism that Title IX expressly provides is a procedure to terminate federal support to institutions that violate Title IX. This is a far cry from the unusually elaborate enforcement

13

> provisions of the statutes at issue in *Sea Clammers*, which expressly provided for citizen suits and enforcement by government agencies. By holding that Title IX contains not only an implied right of action, but also a damages remedy, [. . .] the Supreme Court has indicated that the sole express enforcement mechanism contained in Title IX is not exclusive. We believe, therefore, that there is no evidence that Congress intended to foreclose the use of § 1983 to redress violations of Title IX.

*Id.* (internal citations and quotation marks omitted).

In a nutshell, *Crawford*'s two holdings state a plaintiff may (1) seek redress for constitutional violations under § 1983 "even if the same set of facts also gives rise to a cause of action for the violation of statutory rights," and (2) seek to enforce violations of Title IX through § 1983. *Id.* Because Plaintiffs' § 1983 claims are premised entirely on constitutional rights—not statutes, only the first *Crawford* holding is applicable to the Motion. Therefore, barring any implication from *Abrams*, Plaintiffs may bring a § 1983 claim for a violation of constitutional rights even if those rights give rise to a violation of a statute, which, in this case, would be Title VI.

### 2. *Abrams*

Defendants argue *Crawford* does not apply because it was "undermined" by an elaboration on the *Sea Clammers* doctrine in *Abrams*. Reply at 2. In *Abrams*, the Supreme Court set forth the procedure to determine whether a plaintiff may enforce a statute pursuant to § 1983. *Abrams*, 544 U.S. at 119-20. First, "to sustain a § 1983 action, the plaintiff must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs." *Id.* at 120. This creates "'a rebuttable presumption that the right is enforceable under § 1983.'" *Id.* (quoting *Blessing v. Freestone*, 520 U.S. 329, 341 (1997)). A defendant can "defeat this presumption by demonstrating that Congress did not intend that remedy for a newly created right.'" *Id.* Evidence of such congressional intent "may be found directly in the

14

statute creating the right, or inferred from the statute's creation of a 'comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" *Id.* (quoting *Blessing*, 520 U.S. at 341).

*Abrams* also recognized: "in *all* of the cases in which we have held that § 1983 *is* available for violation of a federal statute, we have emphasized that the statute at issue, in contrast to [that] in *Sea Clammers* [. . .], *did not* provide a judicial remedy (or, in most of the cases, even a private administrative remedy) for the rights violated." *Id.* at 121 (emphases in original). Defendants apparently contend this passage conclusively overrules *Crawford*, because there is an implied right to a judicial remedy under Title IX. *See Alexander*, 532 U.S. at 279-80 (recognizing a private right of action exists under both Title VI and Title IX). *Abrams* admittedly appears to conflict with *Crawford*'s second holding, that is, whether a party may pursue violations of Title IX through § 1983.

However, nothing in *Abrams* suggests a departure from the first *Crawford* holding, which allows constitutional claims to proceed under § 1983 even though they could have been brought under a statute. Thus, if *Abrams* overrules *Crawford*, it does so only insofar as *Abrams* impacts the second *Crawford* holding, that is, the holding allowing a Title IX claim to be brought pursuant to § 1983. Because Plaintiffs' § 1983 claim is premised entirely on constitutional violations—not a statute, the court need not address whether *Abrams* overrules *Crawford*'s second holding. Therefore, under the first *Crawford* holding, Plaintiffs are permitted to seek redress for violations of constitutional rights pursuant to § 1983, and the court shall allow this claim to proceed.[6]

Defendants cite *Alexander v. Underhill*, 416 F. Supp. 2d 999 (D. Nev. 2006) and *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165 (1st Cir. 2007) as cases in which a court held constitutional claims brought under § 1983 are subsumed by Title VI. These cases, however, have no precedential impact on this court. This court is bound to follow

---

[6] Nothing shall prevent Defendants from raising other defenses to this claim.

*Crawford*, which mandates a court to allow § 1983 claims for constitutional violations even when they overlap factually with statutory claims.[7]

## VII. CONCLUSION

In light of the foregoing, **IT IS HEREBY ORDERED THAT**:

1) The Motion (docket no. 16) is **GRANTED IN PART** to the extent it seeks to dismiss Count I against Kathleen Bauer, Ken Haught, Wayne O'Brien and Ron Imoehl in their individual capacity and to the extent it seeks to dismiss the Title VI claim against Kathleen Bauer, Ken Haught, Wayne O'Brien and Ron Imoehl in their official capacity;

2) The Motion is **DENIED IN PART** insofar as it requests dismissal of Count II; and

3) The trial shall proceed as previously scheduled on the following claims:
   a) Count I: Iowa Civil Rights Act claim against the District and against the individually named Defendants in their official capacity
   b) Count I: Title VI claim against the District;
   c) Count II: 42 U.S.C. § 1983 claim against all Defendants.

---

[7] In the other cases Defendants cite, *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791 (3rd Cir. 2007), *Blanchard v. Morton Sch. Dist.*, 509 F.3d 934 (9th Cir. 2007) and *Travis v. Folsom Cordova Unified Sch. Dist.*, No. 2:06CV2074MCEEFB, 2007 WL 529840 (E.D. Cal. Feb. 20, 2007), the plaintiffs did not seek redress for violations of constitutional rights pursuant to § 1983. These cases are therefore immaterial to the Motion.

**IT IS SO ORDERED.**

**DATED** this 22nd day of April, 2008.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA