**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

|  |  |
|---|---|
| ROBERTO TORRES, SR. and DAWN TORRES, as Parents, Natural Guardians and Next Best Friends of DAMIEN TORRES, EMILIO TORRES, ROBERTO TORRES, JR. and ALEIDA TORRES, |  |
| Plaintiffs, | No. 07-CV-2069-LRR |
| vs. |  |
| NORTH FAYETTE COMMUNITY SCHOOL DISTRICT, KATHLEEN BAUER, Individually and in her Official Capacity, KEN HAUGHT, Individually and in his Official Capacity, WAYNE O'BRIEN, Individually and in his Official Capacity, and RON IMOEHL, Individually and in his Official Capacity, | ORDER |
| Defendants. |  |

_____

*TABLE OF CONTENTS*

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.   RELEVANT PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . **2**
      A.   *Administrative Procedure*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
      B.   *Judicial Procedure* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

III.  STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

IV.   ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
      A.   *Distinction Between Discrimination in Accommodation and Discrimination in Education*  . . . . . . . . . . . . . . . . . . . . . . **7**
      B.   *Reasonably Related*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
      C.   *Miscellaneous Arguments*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

V.    CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

# I. INTRODUCTION

The matter before the court is "Plaintiffs' Motion for Reconsideration of Decision to Dismiss Iowa Civil Right's [sic] Act Claims Against the Individual Defendants" ("Motion") (docket no. 28). In the Motion, Plaintiffs Robert and Dawn Torres ask the court to reconsider its decision dismissing their Iowa Civil Rights Act ("ICRA") claims against Defendants Kathleen Bauer, Ken Haught, Wayne O'Brien and Ron Imoehl.

# II. RELEVANT PROCEDURAL BACKGROUND

## A. Administrative Procedure

On January 27, 2006, Plaintiffs filed ICRA administrative complaints on behalf of their children, Aleida Torres, Damien Torres, Roberto Torres, Jr. and Emilio Torres. Administrative Complaints, *passim* (docket no. 22-2). Plaintiffs alleged their children's schools and certain individuals from those schools were liable for discriminating against the Torres children on the basis of race, color and national origin. In each Administrative Complaint, when asked to identify the area in which discrimination occurred, Plaintiffs checked the box for discrimination in "<u>Education</u>." Administrative Complaints at 2, 6, 10 & 14 (emphasis in original). Plaintiffs selected this option from the following range of choices: "<u>Credit</u>," "<u>Employment</u>," "<u>Education</u>" and "<u>Public Accommodation</u>." *Id.* (Emphases in original.)

Each Administrative Complaint contains a narrative section directing a complainant to "fill in the particulars of [the] complaint" and to "[b]e sure to state why [the complainant] feel[s] [he or she was] discriminated against." *Id.* at 3-4, 7-8, 11-16 & 15-16. In the narrative portion of Aleida and Roberto Jr.'s Administrative Complaints, Plaintiffs state Aleida and Roberto Jr. were "subjected to racial slurs" at school, and the school district "ultimately stated [. . .the Torres family] just had to accept that this is the way it is in the area, and people just have that type of attitude." *Id.* at 8 & 16. Plaintiffs also state the school district failed to take action to counter the racist behavior aimed at

Aleida and Roberto Jr.

In the narrative portion of Damian's Administrative Complaint, Plaintiffs state Damian was "singled out and target[]ed by teachers, staff and other students"; "falsely accused of initiating problems"; "written up for items when other [. . .] students would receive no discipline for their actions"; and falsely accused and threatened with discipline for a 911 telephone call he did not make while the student who was ultimately found responsible for the call was not punished. *Id.* at 4.

In the narrative portion of Emilio's Administrative Complaint, Plaintiffs state Emilio was "falsely accused of initiating problems and was written up for items while other white students would receive no discipline for their actions." *Id.* at 12. Plaintiffs also state there was a "scuffle" resulting from certain students referring to Emilio with racial slurs. *Id.* In another incident, Emilio was involved in a fight in which he "merely tried to stand up for and protect himself." *Id.* Emilio alleges he was punished double what the white students were punished, and his punishment was increased by a day when he referred to it as "gay," meaning "inequit[able]." *Id.* Emilio also alleges he was also punished for acts for which white students were not punished.

### B. *Judicial Procedure*

On February 29, 2008, Plaintiffs filed the Second Amended Complaint ("Complaint") (docket no. 12). In the Complaint, among other claims, Plaintiffs alleged the individually named Defendants were liable to Plaintiffs for violations of the ICRA. On March 19, 2008, Defendants filed an amended Motion to Dismiss ("Motion to Dismiss") (docket no. 16).[1] In the Motion to Dismiss, Defendants argued Plaintiffs could not raise a discrimination in education claim under the ICRA against the individually named

---

[1] On February 15, 2008, Defendants filed a Motion to Dismiss (docket no. 6). On March 10, 2008, the court denied the Motion to Dismiss without prejudice and granted Defendants leave to file an amended motion to dismiss (docket no. 14).

Defendants because there was no statutory authority for such action. In the Resistance to the Motion to Dismiss, Plaintiffs argued they could bring their ICRA claim against the individually named Defendants because their ICRA claim could be framed as a discrimination-in-accommodation claim—not just discrimination in education. In the Reply in support of the Motion to Dismiss, Defendants argued any discrimination in accommodation claim was barred because Plaintiffs had not exhausted their administrative remedies for that claim—Plaintiffs had only exhausted a discrimination-in-education claim.

Because exhaustion of administrative remedies bears on the court's subject-matter jurisdiction, the court entered an order directing Plaintiffs to file the Administrative Complaints with the court. On April 7, 2008, Plaintiffs filed the Administrative Complaints.

On April 22, 2008, the court entered an order denying in part and granting in part the Motion to Dismiss ("Order on Motion to dismiss") (docket no. 25). In that order, the court found Plaintiffs had failed to exhaust their administrative remedies as to their purported discrimination-in-accommodation claim.

On April 29, 2008, Plaintiffs filed the Motion. On May 9, 2008, Defendants filed a Resistance (docket no. 29). The court finds the Motion fully submitted and ready for decision.

### III. STANDARD OF REVIEW

The parties dispute the applicable standard of review. Plaintiffs argue Federal Rule of Civil Procedure 12(b)(6) governs the Motion and set forth a lengthy argument relating to *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).[2] Defendants argue two

---

[2] In *Twombly*, which involved a claim under the Sherman Act, the Supreme Court "retire[d]" the "no set of facts" language traditionally used by courts in Rule 12(b)(6) motions. *Twombly*, 127 S. Ct. at 1968-69; *see also Mo. River Sys. Litig.*, 418 F.3d 915, 917 (8th Cir. 2005) (discussing "no set of facts" test in Rule 12(b)(6) analysis). However, it is unclear whether the old test has been replaced by a new rule or whether *Twombly*

different standards of review apply to the Motion. First, Defendants ask the court to apply the standard on motions to reconsider. "Motions to reconsider are available to correct errors of fact or law" in a prior decision. *Fongwo v. Gonzales*, 430 F.3d 944, 948 (8th Cir. 2005) (internal quotations and citations omitted). "[A] motion to reconsider allows [a judge] to reassess her decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." *Id.* (Internal quotations and citations omitted). Defendants argue the court need not reconsider the Order on Motion to Dismiss because Plaintiffs have not set forth an adequate basis for reconsideration under *Fongwo*. In this circumstance, however, the court shall exercise its discretion to reconsider the Order on Motion to Dismiss because Plaintiffs did not have a meaningful opportunity to respond to the legal argument that is the subject of the instant motion. Second, Defendants argue the court should consider the issue in the Motion as a question of subject-matter jurisdiction, which is governed by Federal Rule of Civil Procedure 12(b)(1). The court agrees with Defendants in this respect and shall apply the subject-matter jurisdiction standard of review instead of the *Twombly* or other Rule 12(b)(6) standard of review for the reasons set forth below.

Whether Plaintiffs exhausted their administrative right to seek judicial resolution of their ICRA claim for discrimination in accommodation determines whether such a claim is ripe for judicial review. *See Hardy v. GMRI, Inc.*, 423 F. Supp. 2d 951, 957 (S.D. Iowa 2006) (Pratt, J.) (holding failure to comply with administrative exhaustion

---

applies to non-antitrust cases. *See generally Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 518-23 (S.D. Iowa 2007) (Gritzner, J.) (discussing *Twombly* and adopting an approach which requires plaintiffs to "provide 'enough factual matter (taken as true) to suggest' unlawful or otherwise actionable conduct" (quoting *Twombly*, 127 S. Ct. at 1965)); *Hogue v. Palisades Collection, LLC*, 494 F. Supp. 2d 1043, 1046 (S.D. Iowa 2007) (Pratt, C.J.) (denying a motion to dismiss in a Fair Debt Collection Practices Act and stating: "[i]n addressing a motion to dismiss under [Rule 12(b)(6)], th[e court] must follow the new standard of review articulated by the United States Supreme Court in [*Twombly*]").

requirements in ICRA would have "jurisdictionally prohibited" a party from filing an action for the same in federal court); *Joseph M. v. Ne. Educ. Intermediate Unit 19*, 516 F. Supp. 2d 424, 434 (M.D. Pa. 2007) (stating appropriate manner for court to consider jurisdictional challenge based on plaintiffs' failure to exhaust administrative remedies was a motion to dismiss for lack of subject-matter jurisdiction); *Artis v. Greenspan*, 474 F. Supp. 2d 16, 17 (D.D.C. 2007) (stating failure to exhaust administrative remedies deprives district court of subject-matter jurisdiction). If Plaintiffs' discrimination-in-accommodation claim is not ripe for judicial review, the court does not have subject-matter jurisdiction over this claim and must dismiss it. *Hardy*, 423 F. Supp. 2d at 957; *Hames v. City of Miami*, 479 F. Supp. 2d 1276, 1283-84 (S.D. Fla. 2007) (stating court treats question of ripeness as a motion to dismiss based on lack of subject matter jurisdiction); *Sea Tow Serv. Int'l v. Pontin*, 472 F. Supp. 2d 349, 357 (E.D.N.Y. 2007) (court construes ripeness complaint in context of subject-matter jurisdiction).

## IV. ANALYSIS

The question for the court is whether Plaintiffs exhausted administrative remedies for their alleged discrimination-in-accommodation claim prior to seeking judicial review for that claim.[3] As a prerequisite to bringing a judicial action pursuant to the ICRA, "[a] person claiming to be aggrieved by an unfair or discriminatory practice must initially seek [. . .] administrative relief by filing a complaint with the [ICRC] in accordance with [Iowa Code] section 216.15."[4] Iowa Code § 216.16(1) (2007). Only after a "proper filing of a complaint with the [ICRC]" may a complainant "commence an action for relief in the

---

[3] Plaintiffs also argue they allege sufficient facts in the Complaint for their discrimination-in-public accommodation claim. The court assumes without deciding Plaintiffs sufficiently pleaded a discrimination-in-accommodation claim in the Complaint.

[4] On March 27, 2008, the Iowa legislature amended Iowa Code section 216.15. 2008 Iowa Legis. Serv. 2292 (West). This does not impact the portion of the statute relevant to the Motion.

district court[.]" *Id.*

## A. *Distinction Between Discrimination in Accommodation and Discrimination in Education*

Plaintiffs contend their Administrative Complaints alleged a claim for discrimination in accommodation. Defendants disagree. Discrimination in education, which Plaintiffs expressly alleged in the Administrative Complaints, occurs when "any educational institution [. . .] discriminate[s] on the basis of race, [. . .] color, [. . . or] national origin [. . .] in any program or activity." Iowa Code § 216.9(1).[5] Iowa Code section 216.9(1)(a) states discriminatory practices include, but are not limited to "[e]xclusion of a person or persons from participation in, denial of the benefits of, or subjection to discrimination in any academic, extracurricular, research, occupational training, or other program or activity." *Id.* § 216.9(1)(a).

Discrimination in public accommodation occurs when any owner, agent or employee of a "public accommodation," which may include public schools,[6] "refuse[s] or den[ies] to any person because of race, [. . .] color, [. . . or] national origin [. . .] the accommodations, advantages, facilities, services, or privileges thereof" or when any owner, agent or employee of a public accommodation discriminates against a person on the basis of race, color, national origin "in the furnishing of such accommodations, advantages, facilities, services, or privileges." *Id.* § 216.7.

The difference between discrimination in accommodation and discrimination in education lies in the matter from which the person subject to discrimination was excluded.

---

[5] On April 2, 2008, the Iowa legislature amended Iowa Code section 216.9. 2008 Iowa Legis. Serv. 2320 (West). This amendment does not impact the portion of the statute relevant to the Motion.

[6] Defendants argue the court should not construe a "public accommodation" to include public schools. Because the court shall dismiss the Motion on other grounds, the court assumes without deciding a "public accommodation" includes a school.

A person subject to discrimination in education is deprived of participation in a school activity or the enjoyment of a benefit of education. *Id.* § 216.9(1)(a). In contrast, a person subject to discrimination in accommodation is denied the use of a public facility or the services or privileges of a public facility. *Id.* § 216.7. Stated another way, discrimination in accommodation results in a person's inability to use or enjoy a public facility, and discrimination in education results in a person's inability to partake in the activities and programs offered by a school. The court recognizes the possibility a claim for discrimination in accommodation may overlap with a discrimination-in-education claim; however, for the reasons stated below, such a situation is not present in this case—at least not insofar as pleaded in the Administrative Complaints.

## B. Reasonably Related

Plaintiffs argue they exhausted their administrative remedies for their alleged discrimination-in-accommodation claim, citing *McElroy v. State of Iowa*, 703 N.W.2d 385 (Iowa 2005) in support of this proposition. In *McElroy*, the question was whether a plaintiff had exhausted her Title VII claim for retaliation in employment. *Id.* at 387. *McElroy* held a "'plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are *like or reasonably related to* the substance of charges timely brought before the administrative agency.'" *Id.* at 390 (quoting *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994) (emphasis added)). "Allegations that are not so related must be dismissed, however, because allowing a plaintiff to pursue them in court would circumvent the statutory scheme which requires use of administrative proceedings." *Id.*[7]

---

[7] *McElroy* abrogated *Reiss v. ICI Seeds, Inc.*, 548 N.W.2d 170, 173-74 (Iowa Ct. App. 1996) (holding plaintiff exhausted administrative remedies under ICRA regarding sex discrimination claim even though plaintiff only presented retaliation claim in administrative complaint because the two claims shared common elements and were therefore necessarily "reasonably related"). *See McElroy*, 703 N.W.2d at 391, n.3.

To determine whether the *McElroy* plaintiff's sex retaliation claim was like or reasonably related to her sex discrimination claim, the court turned to her narrative statements and noted: "When ICRC asked [plaintiff] to state in narrative fashion why she felt she was discriminated against, [plaintiff] described [her supervisor's] continuing harassment. Although she indicated the defendants were not adequately addressing this ongoing harassment, she did not describe any acts of retaliation." *Id.* at 390. The court also found relevant the fact the plaintiff had "checked the box labeled 'sex' but not the 'retaliation' box." *Id.*

The court faces a similar situation in this case. Like the plaintiff in *McElroy*, Plaintiffs only checked the box for discrimination in education—not discrimination in accommodation. Additionally, when the ICRC asked Plaintiffs to state in a narrative fashion why they felt they were discriminated against, Plaintiffs described actions constituting discrimination in education, not discrimination in accommodation.

Both Aleida and Roberto's Administrative Complaints state they were subject to racial slurs at school. After complaining about this treatment, the school district told Plaintiffs the Torres family "just had to accept that this is the way it is in the area, and people just have that type of attitude." Administrative Complaints at 8 & 16. Plaintiffs also stated the school district also failed to do anything to counter the racist behavior aimed at Aleida. While these actions constitute discrimination in education because they allege discrimination in an academic program, they do not allege discrimination in accommodation. Iowa Code § 216.9(1)(a). Nothing in Aleida or Roberto Jr.'s Administrative Complaints can be construed as the Defendants' refusal or failure to "furnish[. . .] accommodations, advantages, facilities, services, or privileges." *Id.* § 216.7. For this reason, Roberto and Aleida's Administrative Complaints are not "reasonably related" to a discrimination-in-accommodation claim.

Damian's Administrative Complaint states he was "singled out" and "target[]ed by

teachers, staff and other students," falsely accused of initiating problems, written up for behavior when other students did not receive any discipline for the same action and falsely accused and threatened for behavior for which he was not responsible while the student found responsible for the behavior was not punished. Administrative Complaints at 4. Damian's Administrative Complaint also states the Torres family moved to give the children a better chance to learn in a different community. Nothing in Damian's complaint indicates his school or its officials refused or denied him any "accommodations, advantages, facilities, services, or privileges." Iowa Code § 216.7. Instead, Damian's Administrative Complaint alleges discriminatory treatment from students, faculty and staff. This qualifies as discrimination in education, not discrimination in public accommodation. *Id.* § 216.9(1)(a). Damian's Administrative Complaint is not "reasonably related" to a discrimination-in-accommodation claim.

Emilio's Administrative Complaint states he was "falsely accused of initiating problems" for which other white students received no discipline, became involved in fights to due racially charged language and was punished more severely than white students. Administrative Complaints at 12. Emilio states there was a "scuffle" resulting from certain students referring to Emilio with racial slurs. *Id.* Emilio's Administrative Complaint does not indicate or imply the school or its employees denied Emilio any public accommodation or any privilege thereof. Emilio's complaint does, however, set forth evidence of discrimination in education because it alleges Emilio was subject to more severe discipline by his school due to race, background and national origin. Iowa Code § 216.9(1)(a). Emilio's Administrative Complaint is not like or reasonably related to a discrimination-in-accommodation claim.

In summary, none of the Administrative Complaints refer to, allege or imply the Torres children were claiming discrimination "reasonably related" to discrimination in accommodation because none of the Administrative Complaints indicated Defendants

denied the Torres children any public accommodation or privilege thereof. Instead, the Administrative Complaints describe discriminatory treatment in academic programs or activities against the Torres children on account of their race, national origin or ethnicity, which is discrimination in education.

Tellingly, Plaintiffs do not provide any facts or analysis showing how their discrimination in education claim is like or reasonably related to a claim for discrimination in accommodation. Plaintiffs merely set forth a conclusory allegation that their discrimination in education claim is like or reasonably related to a discrimination in accommodation claim because it "grow[s] out of the same facts." Plaintiffs' Brief in Support of Motion (docket no. 28-2), at 12. Absent facts showing the Administrative Complaints somehow relate to a denial of a public accommodation or privilege thereof, the court cannot find Plaintiffs' discrimination-in-education claim is reasonably related to a discrimination-in-accommodation claim. There is no implication of any discrimination in accommodation within the four corners of the Administrative Complaints.

## C. Miscellaneous Arguments

Plaintiffs cite a number of cases holding ICRA judicial claims are "like or reasonably related" to a claim in an administrative complaint, such as *Hulme v. Barrett*, 449 N.W.2d 629 (Iowa 1989) and *Lynch v. City of Des Moines*, 454 N.W.2d 827 (Iowa 1990). However, these cases must be distinguished from the instant action because they found a related claim for discriminatory conduct arising *after* and *as a result of* discriminatory conduct alleged in an administrative complaint. *Hulme*, 449 N.W.2d at 633 (finding plaintiff's retaliatory discharge claim was reasonably related to plaintiff's administrative complaint for age discrimination in employment because facts showed the retaliation claim "stem[med] from [plaintiff's] original complaint"); *Lynch*, 454 N.W.2d at 832-33 (allowing plaintiff to pursue a claim for retaliation because it was based on facts occurring after and as a result of her filing an administrative complaint for sexual

harassment).

This unique type of cause and effect relatedness was discussed and distinguished in *McElroy*:

> Although at first glance one might think sex discrimination and attendant retaliation are reasonably related, it is well established that retaliation claims are not reasonably related to underlying discrimination claims. An exception, however, applies when the retaliation alleged in the subsequent lawsuit was clearly *the result of the filing of the administrative complaint*. The timing of the retaliation is crucial in this analysis: if the alleged retaliation began before the filing of the administrative complaint, a subsequent suit for retaliation that was not brought to the attention to the administrative agency is barred.

*McElroy*, 703 N.W.2d at 390 (emphasis in original).

Although sex discrimination and retaliation are not at issue in the instant action, the *McElroy* analysis still applies. No facts show, and Plaintiffs have not alleged, any discrimination in accommodation resulted from Plaintiffs' filing of the Administrative Complaints for the discrimination-in-education claim. Additionally, all discriminatory conduct Plaintiffs allege occurred prior to the filing of the Administrative Complaints. Therefore, cases such as *Hulme* and *Lynch* are not relevant to the Motion.

### V. CONCLUSION

For the foregoing reasons, the Motion (docket no. 28) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 30th day of June, 2008.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA